## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | |
|---|---|
| **GARY WESLEY HALL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NUMBER: _____** |
| ) | |
| **THE LINCOLN NATIONAL** ) | |
| **LIFE INSURANCE COMPANY,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Comes now the Plaintiff, Gary Wesley Hall, and hereby files his Complaint against The Lincoln Life and Annuity Company of New York.

## PARTIES

1.     The Plaintiff, Gary Wesley Hall ("Mr. Hall"), is an insured under Long-Term Disability Policy No. 00001016935500000.

2.     Defendant, The Lincoln National Life Insurance Company ("Lincoln") is the Administrator for the Plan issued to Classic Leather, Inc. ("Classic Leather"). Upon information and belief, Lincoln is a foreign corporation incorporated in the State of New York, which conducts business generally in the State of North Carolina and specifically within this district.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.  Plaintiff asserts claims for long-term disability benefits, enforcement of ERISA rights, and statutory violations of ERISA under 29 U.S.C. §1132.  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131.  Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

4.     The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Mr. Hall, as an employee insured for disability, was supposed to be treated as a beneficiary by the Defendant as statutory fiduciary.  Instead, the Defendant has victimized Mr. Hall by engaging in utterly reprehensible claim handling procedures.  The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by the Defendant to avoid paying Mr. Hall's valid claim that would otherwise be payable under state insurance law.  With no jury trial and no punitive damages, despite the unscrupulous conduct of the Defendant, Mr. Hall's "relief" is limited to the amount of benefits to which he was clearly entitled in the first place, with merely the

2

possibility of interest and attorney's fees. As described in more detail below, the Defendant has clearly engaged in bad faith claim handling and Mr. Hall, at a minimum, is patently entitled all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Mr. Hall is an insured under Lincoln's Group Policy No. 00001016935500000 sponsored by his employer, Classic Leather, Inc. The insurance provides insureds, like Mr. Hall, long term disability benefits. (*See* Lincoln LTD Policy, attached hereto as Exhibit "A")

6.     Mr. Hall was born on September 2, 1949. Mr. Hall is an Army Veteran and served in the Vietnam War. Sometime after his service, Mr. Hall worked at Classic Leather as a furniture designer and patternmaker until his disabilities, primarily spinal and cervical stenosis, prevented him from returning to work.

7.     Mr. Hall's medical impairments include spinal and cervical stenosis, severe scoliosis, Parkinson's disease, neuropathy, chronic neck, back, and joint pain, myalgias, osteoarthritis, rheumatoid arthritis, depression, PTSD, hearing loss, tinnitus, sleep disturbances, and carpal tunnel syndrome. Mr. Hall also suffers from the side effects of his necessary medications. All of these conditions and symptoms render Mr. Hall unable to work.

3

8.     Mr. Hall was originally out of work in 2013 due to severe chronic pain from spinal stenosis in his lumbar region and severe joint pain.

9.     Due to Mr. Hall's inability to work, he was awarded LTD benefits beginning in January of 2013, and was guaranteed benefits until January 2015. (*See* Exhibit "A").

10.     Although Mr. Hall was approved benefits, his conditions did not improve as he continued to suffer from severe, chronic pain. In March of 2014, Mr. Hall visited with Dr. Brian Johnson at Asheville's VA Medical Center for an annual wellness exam. Mr. Hall complained of joint pain, numbness in his right leg, stiffness, tingling, and throbbing pain in his fingers. (*See* VA Progress Notes, dated March 24, 2014, attached hereto as Exhibit "B").

11.     In October of 2016, Mr. Hall was evaluated by Dr. Greg T. Matlick for Mr. Hall's disability benefits. After an in-person evaluation, Dr. Matlick completed a questionnaire and stated that Mr. Hall revealed gait abnormalities, degeneration of joints in both knees, and pain in knees, even without bearing any weight. Dr. Matlick also noted that Mr. Hall requires occasional assistance from a walker. Dr. Matlick ultimately opined that Mr. Hall's current conditions impacted his ability to perform occupational tasks such as standing, walking, lifting, and sitting. (*See* Disability Benefits Questionnaire, dated October 26, 2016, attached hereto as Exhibit "C").

12. Despite evidence that Mr. Hall was disabled, Lincoln informed Mr. Hall on December 2, 2016 that on September 26 he no longer met the definition of disabled and therefore his claim was closed. Lincoln justified its denial of benefits mainly based off the absurd determination that Mr. Hall's medical documentation does not support the inability to perform the material and substantial duties of his occupation as a fabric designer and patternmaker. Not only does this ignore the severity of Mr. Hall's chronic joint and back pain and the side effects from his strong pain medications, but it also ignored the fact that Mr. Hall's condition had not improved, and that he would almost certainly need to continue taking his medications in the future. (*See* Lincoln Denial Letter, dated December 2, 2016, attached hereto as Exhibit "D").

13. Instead, Lincoln relied solely on the opinions of paid paper reviewers, who have never even met Mr. Hall. The physician opined that despite all of Mr. Hall's medical documentation and treating physician's statements, Mr. Hall, a sixty-eight-year-old man with spinal and cervical stenosis, severe scoliosis, and chronic pain, was still capable performing his material and substantial duties as a fabric designer and patternmaker. (*See* Exhibit "D").

14. After Lincoln's wrongful denial of benefits, Mr. Hall's condition only worsened as he suffered from new, debilitating conditions alongside his chronic pain. Just days after his denial, Mr. Hall visited with an audiologist, Ms. Emily

Seals. During this appointment, Mr. Hall complained of hearing loss, and was fitted for a hearing aid. (*See* Audiology Notes, dated December 6, 2016, attached hereto as Exhibit "E").

15.  In addition to his hearing loss, Mr. Hall's chronic pain was unimproved. During an appointment with Dr. Morgenstern on February 22, 2017, Mr. Hall once again complained of "significant back and leg pain when standing, sitting for long periods of time, or twisting/bending." (*See* Medical Neurology Note, dated February 22, 2017, attached hereto as Exhibit "F").

16.  Dr. Morgenstern also noted that despite prior extensive lumbar surgery to address Mr. Hall's severe spinal stenosis, there were several indications of "degenerative changes" in his spine and opined that these changes would not allow him to resume any work that requires standing, bending, twisting, lifting, or sitting for prolonged periods of time. Perhaps most importantly, Dr. Morgenstern opined that Mr. Hall's required medications "could alter his ability to be safe in most work environments." (*See* Exhibit "F").

17.  On March 30, 2017, Mr. Hall met with Dr. Jeffery D. Ratliff, DO at the VA Medical Center in Asheville, NC. Dr. Ratliff noted that he agreed with Dr. Morgenstern's comments from her February 22, 2017 letter. In addition, Dr. Ratliff noted that despite successful lumbar surgeries, he believed "the most clear

disability remains his lumbar spine." (*See* Physician's Administrative Note, dated March 30, 2017, attached hereto as Exhibit "G").

18.     Due to his unimproved condition, Mr. Hall appealed the wrongful termination of his long-term disability benefits by letter on or around March 24, 2017. (*See* Plaintiff's Appeal Letter, attached hereto as Exhibit "H").

19.     During his appeals process, Mr. Hall continued to struggle with debilitating back pain from his spinal and cervical stenosis. In April of 2017, Mr. Hall consulted with his neurosurgeon, Dr. Robert Isaacs and complained of constant cramping and swelling in both hands. (*See* Duke Spine Center Progress Notes, dated April 4, 2017, attached hereto as Exhibit "I").

20.     Also during this visit, Dr. Isaacs noted that due to failing medical management and persistent chronic pain, Mr. Hall would need to undergo spine surgery. (*See* Exhibit "I").

21.     On May 22, 2017, Dr. Isaacs performed Mr. Hall's spinal surgery on Mr. Hall's C5-C6 vertebrae. (*See* Operation Notes, dated May 22, 2017, attached hereto as Exhibit "J").

22.     On May 23, 2017 – the very same day that Mr. Hall was discharged from his surgery – Lincoln denied Mr. Hall's appeal. Despite being in possession of extensive medical records that showed Mr. Hall's severe chronic pain and the debilitating side effects from his necessary medications, Lincoln determined yet

again that Mr. Hall had very few occupational restrictions. (*See* Second Denial Letter, dated May 23, 2017, attached hereto as Exhibit "K").

23. In its denial, Lincoln completely ignored the recommendations from Dr. Morgenstern and Dr. Ratliff that Mr. Hall remain on disability, and again relied exclusively on determinations made by paid medical reviewers. (*See* Exhibit "K").

24. The paid paper reviewers absurdly determined that despite all of Mr. Hall's struggles, his inability to lift over thirty pounds was his *only* medically necessary restriction or limitations beyond September 26, 2016. (*See* Exhibit "K").

25. This type of conduct is especially egregious considering the fact that Lincoln was supposed to treat Mr. Hall as a beneficiary under the plan. With full knowledge that Mr. Hall suffered from an aggressive form of spinal stenosis and would almost certainly need continued medications and therapy, Lincoln absurdly suggested that Mr. Hall could return to full-time employment. (*See* Exhibit "K").

26. Lincoln also failed to consider the severity of Mr. Hall's functional limitations in his hands. In its denial letter, Lincoln highlights that Mr. Hall's job description entails drawing and cutting patterns and details on garments, and yet completely ignored Mr. Hall's complaints of swelling and cramping in his hands from his visits with Dr. Isaacs, which would make the material and substantial duties of his occupation nearly impossible. (*See* Exhibit "K"; Exhibit "I").

27.     After his second denial, Mr. Hall visited with Dr. Morgenstern in June of 2017 for a follow-up appointment. Dr. Morgenstern noted that Mr. Hall continued to exhibit "deficits in gait and balance as well as sensory perception in his limbs." Dr. Morgenstern also noted that Mr. Hall developed evidence of carpal tunnel syndrome that may require surgery. Dr. Morgenstern ultimately opined, "I do not foresee that [Mr. Hall] will be able to function gainfully in *any workplace* with his chronic spine problems." (*See* Medical Neurology Follow-Up Note, dated June 23, 2017, attached hereto as Exhibit "L") (emphasis added).

28.     In August of 2017, Mr. Hall visited Dr. William Jiranek, MD at Duke Orthopedics and complained of chronic knee and hip pain. During this appointment, Dr. Jiranek noted that in addition to his chronic pain, Mr. Hall was also positive for dizziness, tremors, speech difficulty, agitation, confusion, and decreased concentration. (*See* Duke Orthopedic Visit, dated August 29, 2017, attached hereto as Exhibit "M").

29.     Later in September of 2017, Mr. Hall met with his neurologist, Dr. Ashley Whyte-Rayson, to further assess his balance impairment. After evaluating Mr. Hall in person, Dr. Whyte-Rayson diagnosed Mr. Hall with Parkinson's disease and peripheral neuropathy. Dr. Whyte-Rayson also wrote two letters to the North Carolina Department of Insurance, who assisted Mr. Hall in his appeals

9

process. (*See* Physician's Letters to NC Dept. of Ins., dated September 11, 2017, attached hereto as Exhibit "N").

30.     In her letters, Dr. Whyte-Rayson stated that, because Mr. Hall's conditions significantly affect his mobility and balance, he has a "significant risk of falling," and it was her opinion that Mr. Hall "should not return to work for the foreseeable future, especially in an environment around heavy machinery." (*See* Exhibit "N").

31.     Due to Mr. Hall's worsening conditions, Mr. Hall appealed the wrongful termination of his benefits a second time on or around September 21, 2017. (*See* Plaintiff's Second Appeal Letter, attached hereto as Exhibit "O").

32.     Despite the overwhelming evidence that Mr. Hall remained disabled and could not work in any capacity, Lincoln delivered its final denial on November 6, 2017. Once again, Lincoln ignored the opinions of Mr. Hall's treating physicians, and instead relied on paid paper reviewers who stated that Mr. Hall had very few occupational limitations. It is hard to imagine how a paid paper reviewer, who has never even met Mr. Hall, can know more about him and his condition than the neurologists and primary physicians who have treated him for years. Lincoln also justified its final denial based on the absurd determination that there was insufficient evidence to show the severity and intensity of Mr. Hall's restrictions. (*See* Final Denial Letter, dated November 6, 2017, attached hereto as Exhibit "P").

33.    As of this date, Mr. Hall has been denied benefits rightfully owed to him under the plan. Lincoln's decision to deny LTD benefits under the plan was grossly wrong, without basis and contrary to the evidence.

34.    Mr. Hall met and continues to meet the plan's definition of "disabled."

35.    The Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Mr. Hall's claim as required by ERISA.  Instead, Defendant acted only in its own pecuniary interests and violated ERISA by conduct including, but not limited to, the following: reviewing the claim in a manner calculated to reach the desired result of denying benefits; failing to properly consider and credit the medical opinions of Mr. Hall's medical providers and VA Clinic disability evaluations; and failing to have Mr. Hall submit to independent medical exams as allowed by the Plan.

36.    Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Lincoln or to any other entity who may have adjudicated Mr. Hall's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

37.     Upon information and belief, Lincoln was required to both evaluate and pay claims under the LTD Plan at issue, creating an inherent conflict of interest.

38.     Mr. Hall has exhausted any applicable administrative review procedures, and Lincoln's refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on Plaintiff.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

**A.     Defendant's Determination that Plaintiff does not Meet the Definition of Disability as Stated in the Plan was both Erroneous and Unreasonable.**

39.      The LTD Plan at issue states, in part:

Disability or Disabled means:

1.     During the Elimination Period, and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.

2.     After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education nor experience will reasonably.

The Plan further defines Totally Disabled for Waiver of Premiums as follows:

"An insured person (1) is unable, due to sickness or injury, to engage in any employment of occupation for which such Insured Person is or becomes qualified by reason of education, training or experience; and (2) is not engaging in any gainful employment or occupation."

12

(*See* Exhibit "A").

40.     Lincoln failed to properly evaluate the effect Mr. Hall's conditions as a whole would have on his ability to work. As shown by their denial letters, Lincoln consistently cherry-picked notes of improvement from Mr. Hall's extensive medical records in order to wrongfully deny his claim on the grounds that he can work full time. Lincoln is more than happy to highlight the fact that Mr. Hall's x-rays revealed no evidence of instability after his spine surgery, but they completely ignore Mr. Hall's complaints of chronic pain, or the fact that he is prescribed strong narcotics.

41.     After exhausting his administrative remedies with Lincoln, Mr. Hall was awarded VA disability benefits in May of 2018. Although Lincoln was unable to consider Mr. Hall's award in its decision to deny Mr. Hall benefits, Lincoln failed to consider the many in-person evaluations provided during its consideration process from several treating physicians at Mr. Hall's VA Clinic who opined that Mr. Hall was disabled. (*See* VA Disability Decision, dated May 22, 2018, attached hereto as Exhibit "Q").

42.     Mr. Hall was never cured of his chronic pain nor was he informed that he would not require treatment or surgeries again.

43.    Instead of acting as his fiduciary and in his best interests, Lincoln opportunistically denied Mr. Hall the benefits due to him when his back pain lessened for a brief period of time.

44.    Worst of all, when shown clear evidence that Mr. Hall's developed new conditions such as carpal tunnel and Parkinson's disease prior to rendering their final denial, Lincoln refused to reconsider Mr. Hall's situation and forced him to file suit.   His necessary treatments have left him with chronic back pain, tremors, dizziness, weakness, and fatigue. Mr. Hall is a sixty-eight-year-old man fighting for a pain-free, normal lifestyle every single day. Lincoln's assertion that he is not disabled is at the very least unreasonable.

## B.    Defendant's Decision to Terminate Long Term Disability Benefits was not Supported by Substantial Evidence.

45.    In its consideration of Mr. Hall's claim, Lincoln only retained paid consultants to review his medical records. The sole reason for Lincoln's denial was that their paid paper reviewers, who never actually examined Mr. Hall, determined that he suffered from very few restrictions and limitations. Considering the nature of his disease, and his well documented struggles with treatment, the notion that he is not restricted from work is absurd. Based on the language of the policy, and common-sense practice, Lincoln could have easily requested an independent medical examination of Mr. Hall. Instead, they determined that paid paper reviews were superior to years of treatment records and recommendations from Mr. Hall's

14

actual treating physicians.

46.    Mr. Hall's medical files clearly demonstrate that he is disabled. The records of Mr. Hall's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that he is disabled based on their numerous personal examinations, testing, and procedures.  Lincoln's hired medical reviewers, on the other hand, did not examine Mr. Hall.  The conclusion that Mr. Hall was not disabled was based merely on hired reviewers' assessment of his paper medical records. *See Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801,809 (6th Cir. 2002)(finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-examining consultants hired by the insurance company); *see also Kalish v. Liberty Mutual*, 419 F.3d 501, 508 (6th Cir. 2005)("[w]hether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician").

47.    In weighing the opinions of Mr. Hall's providers against those of the independent reviewers retained by Lincoln, the Court should consider the following factors: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See*

*Karanda v. Connecticut Gen. Life Ins. Co., et al.,* 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (citing *Durr v. Metropolitan Life Ins. Co.,* 15 F. Supp. 2d 205, 213 (D. Conn. 1998)). The Court in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003) recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual." While *Nord* provides that this Court is not required to adopt a per se rule to treat Mrs. Miller's physicians' opinions with more weight than those of Defendant's medical assessors, "[c]ommon sense and a stream of legal precedent suggest, however, factual determinations of a treating physician are objectively more reliable." *Burt v. Metropolitan Life Insurance Co.,* No. 1:04-CV-2376-BBM, 2005 U.S. Dist. LEXIS 22810, at *33 (N.D. Ga. Sept. 16, 2005); *see also Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 795-96 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits . . .").

48. Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held their reviews to be the very essence of arbitrariness and capriciousness. *Bennett v. Kemper HAT-Svcs, Inc.* 514 F. 3d 547, 554-55 (6th Cir. 2008); *Montour v. Hartford Life and Acc. Ins. Co.,* 588 F. 3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan* 226 F.3d. 1130, 1143 (9th Cir. 2001). The Supreme Court has acknowledged

that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of "not disabled" in order to save their employers money and preserve their own consulting agreements.'" *Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). The fact that their reports are consistently in conflict with the opinion of treating doctors' determinations should be viewed as evidence of a structurally conflicted process that results in bias. Clearly, in Mr. Hall's case, these decisions indicate that his own medical physicians' evaluations should be afforded far greater weight than those of Defendant, especially since Defendant's reviewers never bothered with even one of the multiple physical exams allowed by the Plan. (*See* Exhibit "A"). Accordingly, Defendant's denial of Mr. Hall's LTD benefits, based on insufficient evidence, was arbitrary and capricious.

**C.** **Defendant's Failure to Properly Credit Mr. Hall's Well-Documented Complaints of Chronic Pain was Arbitrary and Capricious.**

49. Some of Mr. Hall's primary disabling impairments have subjective components; however, they have been diagnosed by his treating physicians based on his medical history, physical examinations, and observation. In their denial letters, Lincoln made no mention of how Mr. Hall's medications would affect his ability to perform work nor is there any evidence in the records that Lincoln even

17

considered Mr. Hall's chronic pain in deciding whether or not to terminate his benefits.

50. In *Quigley v. UNUM Life Ins. Co. of America,* 340 F. Supp. 2d 215, 224 (D.Conn. 2004), the Court held "[w]here the record reveals well-documented complaints of chronic pain, and there is no evidence in the record to contradict the claimant's complaints, the claim administrator, and the court, cannot discredit the claimant's subjective complaints. *Id* at 224.

51. In *Creel v. Wachovia Corp*., No. 08-10961, 2009 U.S. App. LEXIS 1733, 2009 WL 179584 (11th Cir. Jan. 27, 2009) and *Oliver v. Coca-Cola Co*., 497 F.3d 1181, 1196-97 (11th Cir. 2007), vacated in part on other grounds, 506 F.3d 1316 (11th Cir. 2007), the United States Court of Appeals for the Eleventh Circuit considered when it was substantively reasonable to deny benefits for disabilities involving subjective elements. In *Creel*, the plaintiff applied for disability benefits based on a diagnosis of depression, anxiety, and migraine headaches. She received long-term disability benefits, but the benefits were terminated after twenty-four months pursuant to a mental disorder limitation. She sued the insurance company to recover additional benefits based on her migraine headaches. She provided chart notes, standard diagnoses, and lab reports from multiple physicians to support her claim, but the district court entered summary judgment against her because she did

not provide objective evidence. The Court of Appeals vacated the summary judgment order, explaining:

> Our prior cases provide guidance for assessing the reasonableness of benefits denials for disabilities that involve some subjective element, such as migraines, fibromyalgia, and chronic pain syndrome. . . . When the plan has no [objective evidence requirement,] we evaluate the reasonableness of the decision in light of the sufficiency of the claimant's subjective evidence and the administrator's actions. Assuming that the claimant has put forward ample subjective evidence, we look at what efforts the administrator made to evaluate the veracity of her claim, particularly focusing on whether the administrator identified any objective evidence that would have proved the claim and on what kinds of independent physician evaluations it conducted. Accordingly, an administrator's decision to deny benefits would be unreasonable if it failed to identify what objective evidence the claimant could have or should have produced, even if the administrator submitted the file for peer review.

2009 U.S. App. LEXIS 1733, [WL] at *7

52.     Applying this standard, the Court of Appeals in *Creel* found that the records offered by the plaintiff to corroborate her subjective complaints of disabling headaches were sufficient to support her claim and held that the administrator's decision was both wrong and unreasonable. 2009 U.S. App. LEXIS 1733, [WL] at *8.  Similarly, in *Oliver*, the plaintiff sued his employer to recover long term disability benefits based upon radiculopathy and associated cervical pain, fibromyalgia, and chronic pain syndrome. The Court of Appeals held that it was arbitrary and capricious for an employer to deny benefits for disabilities involving elements of subjective pain when the claimant provided ample evidence

19

and the administrator never requested any additional kind of evidence. *Oliver,* 497 F.3d at 1196-97.

53.    Here, Mr. Hall provided evidence to support the claims of his numerous medical impairments. Mr. Hall's medical records contain well-documented complaints of chronic pain and treatments prescribed by his treating physicians. The records provided to Lincoln show Mr. Hall's long time struggles with back and joint pain, as well as a host of other side effects from his necessary medications. Lincoln did not credit these well-documented complaints of chronic pain or the opinions of Mr. Hall's treating physicians, and instead unreasonably terminated his claim.

### D.    Lincoln Failed to Properly Consider Mr. Hall's Non-Exertional Limitations.

54.    In *Demiorovic v. Bldg. Serv. 32 B-J Pension Fund*, 467 F.3d 208, 213-14 (2d Cir. 2006), the Court stated "[A] reasonable interpretation of a claimant's entitlement to payments based on a claim of 'total disability' must consider the claimant's ability to pursue gainful employment in light of all the circumstances." Thus, an administrator must consider whether a beneficiary has "the vocational capacity to perform any type of work. . . that actually exists in the national economy." *Id.* at 213-215.

55.    The Court must also consider non-exertional limitations including (1) intellectual and psychological limitations, including those related to the side effects

of prescription medications and pain; (2) limited manual dexterity; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations can be important aspects of vocational capacity. *See Rabuck v. Hartford Life and Accident Ins. Co.,* 522 F. Supp. 2d 844, 876-77 (W.D. Mich. 2007) (holding that failure to consider non-strength limitations of former company president with short-term memory limitations rendered Transferable Skills Analysis "incredible").

56.     It has been documented multiple times in Mr. Hall's medical records that he suffers from the side effects of his necessary medications and treatment. Mr. Hall's ability to sit for an extended period of time has been shown to be limited at best by Dr. Morgenstern's reports.

## CAUSES OF ACTION

### Count One
### ERISA (Claim for Benefits Owed under Plan)

57.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

58.     At all times relevant to this action, Mr. Hall was a participant of the Long-Term Disability Policy No. 00001016935500000 ("the Plan") within the meaning of 29 U.S.C § 1002(7) and was eligible to receive disability benefits under the Plan.

59.     As more fully described above, the termination and refusal to pay Mr. Hall benefits under the Plan for Long-Term Disability for the period of at least on or about September 26, 2016 through the present constitutes a breach of Defendant's obligations under the plan and ERISA. The decision to terminate benefits to Mr. Hall was not reasonable and it was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1.      The applicable standard of review in this case is *de novo*.

2.      That the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate *de novo* review;

3.      Mr. Hall continues to meet the Plan's definition of being disabled;

4.      Defendant shall pay Mr. Hall all past due benefits in accordance with the policy;

5.      Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

6.      Defendant shall pay Plaintiff's costs of litigation and all other reasonable costs and damages permitted by law;

7.      Defendant shall pay attorney's fees for Plaintiff's counsel;

8.     Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

9.     In the alternative, Plaintiff prays the Court to enter an Order remanding this case to Defendant, as administrator, to reconsider Plaintiff's appeal.

Respectfully Submitted,


_/s/ D. Tyler Nabors_____
D. Tyler Nabors, Esq.
DTNabors@crumleyroberts.com
CRUMLEY ROBERTS, LLP
2400 Freeman Mill Road, Ste. 200
Greensboro, NC 27406
Phone: 336.232.5053
Fax: 336.333.9894
NC State Bar No. 35474

Peter H. Burke, Esq.
_Appearance anticipated_
pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway
Suite 100
Birmingham, Alabama 35243
Phone: 205.930.9091
Fax: 205.930.9054

_Attorneys for Plaintiff Gary Wesley Hall_

**PLEASE SERVE DEFENDANT BY UPS AT:**

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY
c/o The Prentice Hall Corporation System, Inc.
135 North Pennsylvania Street, Suite 1610
Indianapolis, IN 46204

23